UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| TW, BY AND THROUGH HER MOTHER AND NEXT BEST FRIEND, AW | | PLAINTIFF |
| v. | CIVIL ACTION NO. | 1:20-cv-208-LG-RHW |
| UNIVERSAL HEALTH SERVICES, INC. d/b/a GULFPORT BEHAVIORAL HEALTH SYSTEM, and UHS OF DELAWARE, INC., and TBD ACQUISITION II, LLC | | DEFENDANTS |

JURY TRIAL REQUESTED

**AMENDED COMPLAINT**

COMES NOW plaintiff TW, by and through her mother and next best friend AW, who together file this Complaint for damages.

1. Named as plaintiff is TW, a minor child, who is bringing this lawsuit by and through her mother and next friend AW. Both TW and her mother AW reside at an address located within Harrison County, Mississippi. TW and AW are citizens of the State of Mississippi and are not citizens of any other state.

2. Named as defendant is Universal Health Services, Inc. ("UHS"), which does business as Gulfport Behavioral Health System. Universal Health Services, Inc. is a citizen of the state of Delaware with a principal place of business in King of Prussia, Pennsylvania, and wholly owns the other named defendant corporations.

3. Named as defendant is UHS of Delaware, Inc., is a citizen of the state of Delaware with a principal place of business in King of Prussia, Pennsylvania. UHS of Delaware, Inc. is the management company for Universal Health Services, Inc. The registered agent for service of process for UHS of Delaware, Inc. is Corporation Service Company, 7716 Old Canton Rd, Suite C, Madison, MS 39110.

4. Named as defendant is TBD Acquisition II, LLC, which is wholly owned by UHS of Delaware, Inc. Gulfport Behavioral Health System is the fictitious name of TBD Acquisition II, LLC. The registered agent for service of process for TBD Acquisition II, LLC is Corporation Service Company, 7716 Old Canton Rd, Suite C, Madison, MS 39110.

5. As used herein, the terms "UHS" or "defendant" or "defendants" refers to all three named defendant corporate entities.

6. Diversity between the parties is complete and plaintiff TW seeks $20 million in punitive damages plus compensatory damages of $1 million. The amount in controversy therefore exceeds the diversity jurisdiction minimum amount of $75,000.00.

7. The rape of TW and acts of negligence that allowed the rape to happen occurred at Gulfport Behavioral Health System, which is owned and operated by Universal Health Services, Inc. UHS claims to be one of the largest providers of hospital and healthcare services in the United States with more than 90,000 employees. Through its subsidiaries, the company operates 26 acute care hospitals, 328 behavioral health inpatient facilities, and 42 outpatient facilities and ambulatory care centers in 37 U.S. states plus Washington, D.C., Puerto Rico and the United Kingdom. According to its website, UHS has been ranked in the Fortune 500 for seventeen years and currently ranks #281 on Fortune 500 list of America's corporations by revenue; according to the Fortune 500 rankings information linked to by the UHS website, UHS has revenues of $11,378,300,000 ($11.4 billion), profits of $814,900,00 ($815 million), and a market value of as of March 31, 2020 totaling $8,593,200,000 ($8.6 billion).

8. TW was thirteen years of age when she was admitted for in-patient treatment due to depression. UHS advertises on its website: "Inpatient treatment at

Gulfport Behavioral Health System provides adults, adolescents, pre-adolescents and children (as young as 4) with a safe, supportive environment where they can recover from an emotional or mental health issue." However, the facility did not provide TW with a "safe, supportive environment," as evidenced by the fact that she was raped by a young man of seventeen years while in-patient in the Gulfport facility.

9. UHS failed to properly supervise adolescent patients who had been admitted to the Gulfport facility, and as a result on March 26, 2019, TW was coerced by a female roommate and a seventeen-year-old male patient to enter the male patient's room. The seventeen-year-old male then had penetrative sexual intercourse with TW. TW was taken to Memorial Hospital where the rape was confirmed through physical evidence.

10. Defendants had a duty to conform to a specific standard of conduct for the protection of others against the unreasonable risk of injury; (2) the defendant breached that duty; (3) there is a causal relationship between the breach and the alleged injury; and (4) the plaintiff suffered "injury or damages."

11. Defendants had a duty to employ reasonable care to protect TW from reasonably foreseeable injuries at the hands of another. It was reasonably foreseeable that a seventeen-year-old male patient would seek to have sex with younger female patients like TW, that a thirteen year old girl suffering from depression would make an easy sexual target for an older predatory male, and that sexual intercourse would occur unless measures were taken to adequately supervise the teenagers.

## NONECONOMIC DAMAGES

12. MS Code § 11-1-60 (2)(b) provides that in the event the trier of fact finds the defendant liable, they shall not award the plaintiff more than One Million Dollars

($1,000,000.00) for noneconomic damages. Plaintiff TW therefore seeks $1 million in compensatory damages for the reasons stated herein.

13. Defendants held out Gulfport Behavioral Health System as a safe and secure environment for children and promised AW that her daughter TW would be safe while in-patient at the facility. AW and TW relied upon the promises made that TW would be safe. UHS breached its duties undertaken in promoting Gulfport Behavioral Health System as safe environment for of healing for psychological and emotional problems of children, and breached its promises to keep TW safe, resulting in the injuries described herein.

14. At all relevant times, UHS had inadequate policies and procedures for preventing sexual abuse of children by older patients. Defendants knew or should have known of the lack of supervision over teenaged patients that resulted in her rape but failed to warn AW and TW of this danger. This danger was not open and obvious.

15. Plaintiff TW was a patient and therefore a business invitee of UHS, which was obligated to protect TW. Reasonable security measures and oversight would have prevented the injury to plaintiff, and UHS's failure to establish, implement or carry out said measures proximately caused plaintiff's injuries. Defendants breached the duty of care in numerous ways, including but not limited to:

    a. Failure to provide reasonable security measures for the protection and safety of children who were patients from foreseeable harm;

    b. Failure to establish, implement and follow through with policies and procedures designed to ensure the protection and safety of their patients;

    c. Failure to properly hire, train and supervise the facility's personnel;

d. Failure to properly hire, train and supervise the persons hired to provide security for the facility;

e. Failure to use reasonable care; and

f. Other negligent acts and omissions that may be discovered and shown at the trial of this matter.

16. In addition to ordinary care, UHS had a heightened duty of care over TW due to her young age, her vulnerability as a child suffering from depression, and her inpatient status which made it impossible for her parents to provide for her safety other than by depending on UHS and the promises it had made. Defendants therefore owed TW at least the care of a parent of ordinary prudence would observe in comparable circumstances, but failed to do so, resulting in the rape of TW and her damages.

17. Plaintiff alleges UHS negligently hired, supervised, and retained its employees by (a) failing to care for and ensure TW's safety while she was a patient at Gulfport Behavioral Health System facility, (b) failing to properly train, supervise, discipline, retain, hire, and/or discharge its employees agents, and/or representatives. As a direct and proximate result, TW sustained the harms alleged herein.

18. Defendants' employees acted with acted not only with negligence but also with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud by allowing or failing to prevent the rape of TW while she was a patient at Gulfport Behavioral Health System. UHS is liable for the actions and inactions of its employees alleged herein which caused the damages suffered by the plaintiff, as such actions and/or inactions were committed within the course and scope of their employment.

19. Defendants' violations of TW's medical privacy rights through violations of HIPAA and the Privacy Rule is part of a pattern and practice of incompetent behavior, negligence, failure to train employees, and failure to supervise employees relevant to the award of punitive damages sought herein. An employee of the Gulfport Behavioral Health System facility informed TW's grandmother that TW was a patient there, gave the grandmother other information regarding TW's status, and acted as a line of communication between TW and her grandmother. Furthermore, a different employee assigned to TW's unit confirmed to another family member that TW was a patient at the facility. TW's grandmother and the other family member are not personal representatives of TW and are not "another person responsible for the care" of TW pursuant to 45 CFR 164.510(b)(1)(ii). TW is a minor and not old enough to consent to the release of her private medical information. The aforesaid communications were done without the knowledge or consent of AW, and the circumstances described in 45 CFR 164.510(b)(3) were not present. The facility employees did not obtain AW's agreement to disclose TW's protected health information; AW was no provided with the opportunity to object to the disclosures and would have objected to the disclosures if she had been given such an opportunity; finally, there was no basis for the facility employees to reasonably infer from the circumstances, based on the exercise of professional judgment, that AW would not object to the disclosures.

20. As a direct and proximate result of defendants' negligence, gross negligence, wanton disregard and reckless behavior, plaintiff TW has suffered severe psychological, emotional and physical injuries, and emotional distress arising out of the physical injuries, pain and suffering, mental anguish, inconvenience, loss of capacity for

the enjoyment of life, inability to lead a normal life, shame, and humiliation. Additionally, plaintiff sustained an aggravation of an existing disease or mental or physical defect or activation of a latent condition and the same losses associated with such. The injuries and damages are permanent and continuing in nature and the plaintiff will suffer such losses in the future.

21. UHS caused severe mental anguish to plaintiff TW through its above-described actions and has committed the torts of outrage (also known as intentional infliction of emotion distress) and negligent infliction of emotional distress. Defendants' acts are ones that evoke outrage or revulsion in civilized society, and defendants' behavior toward TW was willful, wanton, grossly careless, indifferent or reckless, and thereby caused her to suffer severe mental anguish and emotional distress. Moreover, defendants' behavior caused demonstrative harm resulting in physical manifestations of emotional distress and actual physical injury that were reasonably foreseeable. Plaintiff therefore seeks emotional distress damages and punitive damages under the tort laws of the State of Mississippi.

22. Plaintiff does not bring medical malpractice claims herein. Plaintiff does not contend that the injury arose based on erroneous assessment of her medical or physical condition or the failure to provide adequate medical services based on that condition. Otherwise, plaintiff is pursuing in this lawsuit all causes of action that have been notice pleaded herein, whether or not such causes of action are specifically identified herein.

## PUNITIVE DAMAGES

23. Plaintiff seeks punitive damages of $20 million, which is the maximum allowed by Mississippi law, MS Code § 11-1-65 (3)(a)(i), which states that an award of

punitive damages shall not exceed Twenty Million Dollars ($ 20,000,000.00) for a defendant with a net worth of more than One Billion Dollars ($ 1,000,000,000.00).

24. In all cases involving an award of punitive damages, the fact finder, in determining the amount of punitive damages, shall consider, to the extent relevant, the following factors: (a) the defendants' financial condition and net worth; (b) the nature and reprehensibility of the defendants' wrongdoing, for example, the impact of the defendants' conduct on the plaintiff, or the relationship of the defendant to the plaintiff; (c) the defendants' awareness of the amount of harm being caused and the defendants' motivation in causing such harm; (d) the duration of the defendants' misconduct and whether the defendant attempted to conceal such misconduct; and (e) any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages. The trier of fact shall be instructed that the primary purpose of punitive damages is to punish the wrongdoer and deter similar misconduct in the future by the defendant and others while the purpose of compensatory damages is to make the plaintiff whole. Each factor is addressed in order as follows:

(a) According to the most recent Form 10-Q filed by UHS with the United States Securities and Exchange Commission (SEC), the company's total consolidated assets for the three months ending March 31, 2020 were $11,620,426,000 ($11.6 billion); the total assets for that time just for Behavioral Health Services was $6,871,852,000 ($6.9 billion). UHS easily qualifies for the maximum amount of punitive damages allowed under Mississippi law.

(b) The conduct of defendant is truly reprehensible since it led to the rape of an especially vulnerable 13-year-old girl who was in defendants' care and whom defendants

had promised to keep safe in a healing, nurturing environment. Defendant is a for-profit organization that coaxes parents to have children stay in-patient for mental health treatment, while promising to keep them safe, all in order to make money. To do so but then severely neglect its duties in this regard greatly exceeds the bounds of human decency and corporate responsibility.

(c) Defendant was aware that its pattern and practice of allowing the commingling of young teen-aged men and vulnerable young girls had resulted in sexual assaults in recent the past yet did nothing to correct this problem. Its motivation to allow these sexual assaults on children in its care was continued financial gain. At trial plaintiff will show that UHS has a pattern of negligent supervision that has led to sexual assaults of patients, including children, such as was alleged in the Southern District of Mississippi case *John Doe v. Brentwood Behavioral Healthcare of Mississippi*, Case 3:13-cv-00779-DPJ-FKB. The Universal Health Services, Inc. is the parent company of Brentwood Acquisition, Inc. d/b/a Brentwood Behavioral Healthcare of Mississippi. In other locations outside of Mississippi, there have been allegations of sexual assault on in-patient children, including another alleged rape of a thirteen-year-old girl by a seventeen-year-old male patient at the Timberlawn Psychiatric Center in Dallas, Texas. On July 23, 2015 and again on November 1, 2017, federal officials sent that UHS facility letters saying that the UHS facility "no longer meets the requirements for participation in the Medicare program because of deficiencies that represent an immediate jeopardy to patient health and safety." UHS has not corrected those deficiencies, and the result has been the rape of TW.

(d) The duration of the misconduct at issue is several years over multiple facilities in this and other states.

(e) Other circumstances that show why punitive damages should be awarded include the HIPAA and Privacy Rule violations toward TW detailed hereinabove. Moreover, in considering the reasonableness of an award of punitive damages, the court shall take into certain factors, including the existence and frequency of similar past conduct. UHS is the provider of 20% of all inpatient behavioral services in the United States, and as such has a special responsibility to set high standards of safety for patients, particularly for vulnerable patients such as young children. Young children facing mental health problems such as severe depression are especially vulnerable, and it is easily foreseeable that lack of adequate supervision of vulnerable teen-aged girls comingled in a facility with poorly supervised older teenaged young men puts the girls in danger of rape. UHS is an extremely large, wealthy and powerful corporation that has failed in this and other cases to adequately insure the safety of children entrusted to its care. Imposition of the maximum amount of punitive damages is not only rationally related to the purpose to punish what occurred giving rise to the award, it is also vitally necessary in order to deter the repetition of unsafe practices by UHS and others that lead to sexual assault and rape in mental healthcare facilities.

25. Plaintiff is entitled to and hereby specifically demands a trial by jury on all issues.

WHEREFORE, plaintiff prays that defendants be served with a copy of this Complaint after being duly cited to appear and answer hereto, and that after the expiration of all legal delays and due proceedings are had there be a trial by jury with individual judgment rendered herein in favor of plaintiff and against the defendants in an amount of

compensatory damages of $1,000,000.00, together with $20,000,000.00 in punitive damages, plus legal interest and all costs of these proceedings including expert witness fees to be taxed as costs of court, attorney's fees if appropriate, and for all legal and equitable relief this Honorable Court shall deem appropriate. *Deus autem omnipotens benedicat Americae.*

Respectfully submitted on June 29, 2020, A.D.

**LEE LAW FIRM, LLC**

By: _____
K. Douglas Lee, MSB# 9887
628 Churchwell Road
Hattiesburg, MS 39401
Phone: (601) 583-4447
Fax: (601) 450-0152
doug@leelaw.us
Attorney for Plaintiff